[No. D011704. Fourth Dist., Div. One. May 17, 1991.]

EVERETT W. MORRIS, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

152

**COUNSEL**

Gerald D. Brody for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**TODD, J.**—Everett W. Morris appeals a judgment denying his petition for a writ of mandate seeking an order commanding the state Department of Motor Vehicles (DMV) to annul its order made pursuant to Vehicle Code sections 13352, subdivision (a)(5), and 23170[1] revoking Morris's driver's license for three years for having had his third drunk driving conviction within seven years. Morris's writ petition against DMV is based on the assertion that one of his prior drunk driving convictions, a July 28, 1982, conviction in North Carolina, was invalid because the conviction was in violation of his due process and other constitutional rights.

The trial court denied the petition on the basis it was bound by the holding of *Cook* v. *Department of Motor Vehicles* (1973) 33 Cal.App.3d 265 [109 Cal.Rptr. 104], a decision of the Court of Appeal, Fourth District, Division Two, which followed the Supreme Court case of *Thomas* v. *Department of Motor Vehicles* (1970) 3 Cal.3d 335 [90 Cal.Rptr. 586, 475 P.2d 858]. The holdings of *Cook* and *Thomas* are that a petition for a writ of mandate against DMV to review DMV's administrative act in performing its mandatory function of revoking the license is not a proceeding in which additional sanctions may be imposed against the petitioner by reason of a prior conviction; DMV has neither the duty nor the power to pass on the validity of a prior conviction; and mandate does not lie against DMV for the purpose of determining the validity of a prior conviction. (*Cook, supra,* 33 Cal.App.3d at p. 267; *Thomas, supra,* 3 Cal.3d at p. 338.) The trial court did not follow *Axness* v. *Superior Court* (1988) 206 Cal.App.3d 1489, 1496 [255 Cal.Rptr. 896], a decision of the Court of Appeal, First District, Division Four, holding contrary to *Cook* that mandamus is available to challenge the constitutionality of an out-of-state conviction if the conviction will result in the suspension of a California driver's license, and the driver is otherwise without a forum in California in which to raise such a challenge because his latest conviction occurred in another jurisdiction.

Based on the principle of stare decisis and our determination *Axness* misapplied binding precedent in reaching its conclusion, we affirm the judgment denying the petition for a writ of mandate.

### FACTS

On September 28, 1988, under section 13352, subdivision (a)(5), DMV revoked Morris's driver's license for three years effective August 23, 1988, upon receiving notice of his 1988 conviction in California in the municipal

---

[1]All statutory references are to the Vehicle Code unless otherwise specified.

court, El Cajon judicial district, of a drunk driving violation (under § 23152)[2] which was punishable under section 23170, prescribing the punishment for persons convicted of a drunk driving violation and certain others who have two separate similar violations within seven years.[3] One of Morris's prior convictions, the subject of his claim it was an invalid conviction, occurred in North Carolina in 1982. The other prior conviction occurred in 1984 in California in the municipal court, South Bay judicial district.

## DISCUSSION

Section 13352, subdivision (a), in part requires DMV to "immediately suspend or revoke . . . the privilege of any person to operate a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted of a violation of Section 23152 . . . ." Subdivision (a)(5) of section 13352, in conjunction with section 23170, among other things, prescribes the three-year revocation for persons with three such convictions within seven years.[4] Subdivision (d) of section 13352 provides in pertinent part:

---

[2]Section 23152 now provides in part:

"(a) It is unlawful for any person who is under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug, to drive a vehicle.

"(b) It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle." (Stats. 1990, ch. 708, § 1.)

Before January 1, 1990, the blood-alcohol content percentage was 0.10 or more in order to constitute a violation of subdivision (b) of the section. (Stats. 1982, ch. 1337, § 1, p. 4961.)

[3]Section 23170 provides:

"(a) If any person is convicted of a violation of Section 23152 and the offense occurred within seven years of two separate violations of Section 23103 as specified in Section 23103.5 which occurred on or after January 1, 1982, 23152, or 23153, or any combination thereof, which resulted in convictions, that person shall be punished by imprisonment in the county jail for not less than 120 days nor more than one year and by a fine of not less than three hundred ninety dollars ($390) nor more than one thousand dollars ($1,000). The person's privilege to operate a motor vehicle shall be revoked as required in paragraph (5) of subdivision (a) of Section 13352. The court shall require the person to surrender his or her driver's license to the court in accordance with Section 13550.

"(b) Any person convicted of a violation of Section 23152 punishable under this section shall be designated as an habitual traffic offender for a period of three years, subsequent to the conviction. The person shall be advised of this designation pursuant to subdivision (b) of Section 13350."

[4]Section 13352, subdivision (a)(5), provides in part:

"(a) . . . For purposes of this section, suspension or revocation shall be as follows:

"(5) Upon a conviction or finding of a violation of Section 23152 punishable under Section 23170, the privilege shall be revoked for a period of three years. The privilege shall not be reinstated until the person files proof of ability to respond in damages as defined in Section 16430 and gives proof satisfactory to the department of successful completion, subsequent to the most recent underlying conviction, of an 18-month program or a 30-month program [of alcohol recovery services to problem drinkers] . . . ."

"A conviction of an offense in any state . . . of the United States . . . which, if committed in this state, would be a violation of Section 23152, is a conviction of Section 23152 for purposes of this section . . . . The department shall suspend or revoke the privilege to operate a motor vehicle pursuant to this section upon receiving notice of such a conviction."

■ Thus, the statutes spell out DMV's duty to suspend or revoke driver's licenses in cases of this type where DMV receives abstracts of judgment showing three such convictions within a seven-year period. *Thomas, supra,* 3 Cal.3d 335, 338, squarely holds, "The department, having received abstracts of judgments showing two convictions of petitioner for drunk driving within a seven-year period, *was required* to suspend his driving privilege. . . . It is no part of the department's duty to pass on the validity of those judgments." (Italics added.)

In *Thomas, supra,* 3 Cal.3d 335, the court applied a version of section 13352 containing mandatory language concerning DMV's duty to suspend or revoke the driver's license of persons convicted of multiple drunk driving offenses essentially identical to the language of the section as it presently reads, and requiring a one-year suspension for two drunk driving convictions within seven years.[5] After the DMV suspended the petitioner's license upon receipt of a second abstract of judgment of his conviction of drunk driving in California courts within seven years, the petitioner filed a petition for a writ of mandate against DMV to compel it to set aside the order of suspension on the ground the first conviction in 1966 was invalid because he was not represented by counsel at the time. The trial court found the first conviction was invalid and granted the petition, ordering DMV to vacate and set aside its suspension order.

The Supreme Court reversed. ■ *Thomas* pointed out it was the rule that "a judgment of prior conviction, even though valid on its face, may be attacked at any time on constitutional grounds *in a proceeding in which by reason of such prior conviction increased sanctions may be imposed* against the person suffering it. [Citations.]" (3 Cal.3d at p. 338, italics added.) The court observed the petitioner could have challenged the prior in the second drunk driving proceeding against him since the first such conviction "served

---

[5]The version of section 13352 considered in *Thomas* read, in pertinent part:

"The department shall immediately suspend or revoke the privilege of any person to operate a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted of driving a motor vehicle while under the influence of intoxicating liquor. The suspension or revocation shall be as follows:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(c) Upon a second such conviction within seven years, such privilege shall be suspended for one year and shall not be reinstated unless and until such person gives proof of ability to respond in damages as defined in Section 16430." (*Id.* at p. 337, fn. 1.)

as a basis to increase the sanctions against him" in the second drunk driving proceeding. (*Ibid.*) Had petitioner done so and prevailed in the second drunk driving proceeding, the invalidity of the first conviction would have been res judicata and DMV would have had no authority to issue the order of suspension. However, as noted above, *Thomas* held DMV was required to suspend the petitioner's driver's license upon receiving abstracts of two drunk driving convictions within seven years and it is no part of DMV's duty to pass on the validity of those judgments.

*Thomas* explained the mandate proceeding it was considering "is simply a petition to review the department's administrative act in performing a mandatory function . . . . [I]t is not a proceeding in which additional sanctions may be imposed against petitioner by reason of his 1966 conviction. Accordingly, no basis exists for permitting a collateral attack on the 1966 judgment of conviction in this mandate proceeding against the department; . . . [T]he superior court improperly granted the writ. [Citations.]" (3 Cal.3d at p. 338, italics added.) The court went on to explain other remedies that were available to petitioner in the court rendering the prior judgment of conviction or in the superior court which, if successfully asserted, would result in avoidance of his license suspension by the DMV. (*Id.* at pp. 338-339.)

In *Cook* v. *Department of Motor Vehicles, supra,* 33 Cal.App.3d 265, the Second Division of this appellate district followed *Thomas* in a case involving a petition for writ of mandate to compel the DMV to annul its order suspending the petitioner's driver's license. The suspension in *Cook* was based on two out-of-state drunk driving convictions. The Court of Appeal affirmed the trial court's dismissal of the petition pursuant to *Thomas*. *Cook* specifically held "[t]he fact that petitioner's convictions are out-of-state does not obviate the *Thomas* holding." (*Cook* v. *Department of Motor Vehicles, supra,* 33 Cal.App.3d 265, 267.) Discussing the petitioner's due process challenge to section 13352, *Cook* went on to state:

"The fact of conviction in another state does not vest the Department of Motor Vehicles with jurisdiction to test the validity of conviction[s] in those other states. Nor is he denied mandamus in California against the Department of Motor Vehicles if one or both of said courts should determine that their judgment was invalid. There is no indication in *Thomas* that petitioner is denied the privilege of bringing mandamus in the superior court if he has complied with the apparently only prerequisite available to him, attacking the judgments in the rendering courts." (*Cook, supra,* 33 Cal.App.3d at p. 268.)

*Axness* v. *Superior Court, supra,* 206 Cal.App.3d 1489, declined to follow *Cook* in the situation before it and said of *Thomas*, "The majority opinion in

*Thomas*, however, did not address out-of-state convictions . . . ." (206 Cal.App.3d at p. 1493, fn. 2.) *Axness* held relief was available in a mandate proceeding against DMV following its suspension of the petitioner's driver's license for eighteen months based on two drunk driving convictions within a five-year period, the last of which occurred out of state. (§§ 13352, subd. (a)(3), 13352, subd. (d), 23165.) The petitioner's last drunk driving conviction occurred in Minnesota and, during the pending California mandate proceeding, a Minnesota court refused to vacate it in response to a challenge to its constitutionality. *Axness* further adjudicated the validity of the Minnesota prior, found it was invalid and directed the superior court to issue a writ of mandate commanding the DMV to rescind its order suspending the petitioner's driver's license. (*Axness, supra*, 206 Cal.App.3d at pp. 1497-1498.)

In granting relief, *Axness* apparently viewed both the out-of-state judgment of conviction and the out-of-state order denying the petitioner's motion to vacate the judgment of conviction[6] as falling within the category of a "foreign penal judgment," as to which California is not required to give full faith and credit under the federal constitution. (*Axness* v. *Superior Court, supra*, 206 Cal.App.3d at pp. 1493-1494, fn. 3 ["[S]ince the full faith and credit clause of the federal Constitution does not require sister states to enforce a foreign penal judgment, California is free to consider what effect, if any, it will give to the [foreign order in a criminal case] . . . ."], citing *Nelson* v. *George* (1970) 399 U.S. 224, 229 [26 L.Ed.2d 578, 582-583, 90 S.Ct. 1963].) We here do not address any concern we may have with *Axness*'s view of the later order.

*Axness* further took the view that the present proceeding was a proceeding in which by reason of the prior conviction increased sanctions may be imposed against the person suffering it. (*Axness, supra*, 206 Cal.App.3d 1489, 1495; see *Thomas, supra*, 3 Cal.3d 335, 338, citing *Hasson* v. *Cozens* (1970) 1 Cal.3d 576, 579 [83 Cal.Rptr. 161, 463 P.2d 385] and *People* v. *Coffey* (1967) 67 Cal.2d 204, 214-215 [60 Cal.Rptr. 457, 430 P.2d 15].) *Axness* relied on the holdings of *Coffey* and *Hasson* to determine the petitioner's entitlement to relief. (206 Cal.App.3d at pp. 1494-1495, "before the department may suspend his California driving privileges on the basis of an out-of-state conviction he must be allowed to challenge the constitutionality of that conviction in a California court.") We find fault in this aspect of *Axness*'s analysis. The *Coffey* case involved an attack on the prior in the very proceeding in which the prior was being used to seek to impose additional

---

[6]The petitioner's motion in the Minnesota court to vacate the prior drunk driving conviction there was made after DMV suspended his license and after DMV's demurrer to his petition for a writ of mandate was sustained with leave to amend " 'to see what [appellant] could do in Minnesota . . . .' " (*Axness, supra*, 206 Cal.App.3d at p. 1493.)

sanctions. *Hasson* involved a petition for writ of mandate reviewing DMV's failure to heed a municipal court's determination of which DMV was notified that a prior drunk driving conviction was invalid, thus making the petitioner a first offender not subject to the driver's license suspension DMV went ahead and imposed.

*Thomas* made clear the type of proceeding under review (the same proceeding involved in *Axness, Cook, Thomas* and the present case) was simply a petition to review DMV's administrative act in performing a mandatory function, "not a proceeding in which additional sanctions may be imposed against petitioner by reason of his [prior] conviction." (*Thomas, supra,* 3 Cal.3d 335, 338.)

In contrast, *Coffey* permitted adjudication of the validity of the prior conviction in the very proceeding in which the prosecution sought to use the charged prior to impose sanctions against the defendant by impeaching his credibility with it. (*Coffey, supra,* 67 Cal.2d at pp. 214-215, 218-219, "the utilization of such a conviction, at the trial of a subsequent offense, for any purpose leading to a conviction for such subsequent offense, is violative of the due process clause of the Fourteenth Amendment.")

On the other hand, *Hasson* enforced against DMV a final adjudication that a prior drunk driving conviction was invalid under circumstances where (1) the court in which the prior was charged ordered it stricken as invalid, (2) that trial court recommended there be no suspension, thus depriving DMV of the authority to suspend the driver's license upon a first conviction under the law then in effect, (3) the abstract was forwarded to DMV, and (4) the judgment became final. DMV nevertheless relied on the prior to suspend the petitioner's driver's license for two drunk driving convictions within seven years. The matter of the validity of the prior was again adjudicated de novo in the mandate proceeding reviewing the DMV suspension. *Hasson* approved the adjudication of the prior's validity in the trial court where the second drunk driving charge was pending, stating in part:

"Since the sanctions which may be imposed upon a person convicted of drunk driving are increased if he has a prior conviction of the same offense within a specified period of time, a collateral attack may be made on any such prior conviction on constitutional grounds." (*Hasson, supra,* 1 Cal.3d at p. 579.)[7]

---

[7]*Hasson* also made the following statement about the superior court's de novo determination of the invalidity of the prior in the mandate proceeding: "The superior court, on the other hand, in granting mandate directing reinstatement of plaintiff's driver's license, was supported not only by the Inglewood Municipal Court's finding the [first] conviction was invalid,

In light of the later *Thomas* case citing it, *Hasson* must be viewed merely as approving the limited role of the superior court in the mandate proceeding against DMV reviewing DMV's suspension of a driver's license based on multiple drunk driving convictions. That limited role in such a proceeding is to determine whether DMV acted within or outside the scope of the mandatory duty imposed upon it to make the required suspension or revocation. In *Hasson*, the mandate review determined DMV acted outside its mandatory duty in going ahead and suspending the driver's license when, by virtue of a final determination by the trial court of the invalidity of the prior drunk driving conviction, the petitioner had only one drunk driving conviction. On the other hand, in *Thomas*, the Supreme Court held the trial court erred in directing DMV to set aside its suspension of the driver's license during the review process by writ of mandate on the ground the prior conviction was invalid, i.e., DMV acted within the mandatory authority it possessed when it suspended the driver's license, DMV had no authority to pass on the validity of the prior and there was no basis to pass on the validity of the prior in a review by mandate of DMV's administrative act in performing its mandatory function.

Moreover, in *Cook*, the appellate court approved the trial court's denial of the writ seeking to set aside the DMV suspension on the basis of the invalidity of the out-of-state priors asserted in the mandate proceeding, i.e., again the DMV acted within the mandatory authority it possessed when it suspended the driver's license for a second out-of-state drunk driving conviction, and an assertion in the mandate proceeding that the priors were invalid could not properly be considered. In other words, it was no part of the DMV decision under review to assess the validity of the priors and thus that is not a proper subject of the review of the suspension decision in the mandate proceeding. Both *Thomas* and *Cook* point out the petitioner has a remedy in the court which rendered the conviction and if the petitioner

---

but, being presented with supporting declarations, authorities, and argument to support collateral attack on the ground of deprivation of constitutional rights, did, in effect, determine the merits of the case by an independent hearing de novo." (*Hasson, supra*, 1 Cal.3d at p. 580.)

This statement addressed an argument that municipal court orders denying motions to vacate and set aside the drunk driving convictions, made during the pendency of the mandate proceeding in the superior court, should be given res judicata effect. *Hasson* rejected this contention on the basis the record did not reflect the later municipal court orders were determined on the merits and thus they could not be given collateral estoppel or res judicata effect. (*Ibid.*) *Hasson* then made the above-quoted statement which should be read as merely showing there was support for the superior court's order issuing the writ. In any event, the quoted statement was unnecessary to resolution of the question before the court: "*Was the trial court bound by the 1967 determination of the Inglewood Municipal Court that plaintiff's 1965 conviction was invalid and that plaintiff could therefore be sentenced as a first offender? [¶] Yes.*" (1 Cal.3d at p. 579.) Thus, the statement was dictum.

succeeds there in setting aside the prior conviction, he may then bring mandate in the California Superior Court to annul the DMV's driver's license suspension or revocation based on the invalid prior conviction.

As we see it, this is the binding precedent in this state. ■ The fundamental premise of *Axness* that the mandate proceeding against DMV reviews the imposition of a "penal sanction" against the petitioner is expressly disavowed in *Thomas*. (*Thomas, supra,* 3 Cal.3d 335, 338, "[I]t is not a proceeding in which additional sanctions may be imposed against petitioner by reason of [the prior] conviction.") DMV's suspension or revocation of driver's licenses has long been held to be a civil, not a penal, sanction. (*Mackler* v. *Alexis* (1982) 130 Cal.App.3d 44, 51 [181 Cal.Rptr. 613]; *McDonnell* v. *Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 662 [119 Cal.Rptr. 804]; *Finley* v. *Orr* (1968) 262 Cal.App.2d 656, 664 [69 Cal.Rptr. 137].) The cases on which *Axness* relies all involve either criminal proceedings in which the allegedly invalid prior is sought to be used to impose an additional penal sanction, or mandate proceedings involving DMV's having failed to give effect to a court's determination of which it has notice that a prior used for suspension or revocation of a driver's license is invalid. (See, in addition to *Coffey, supra,* 67 Cal.2d. 204, 214-215, *Hasson, supra,* 1 Cal.3d 576, 579, *Ganyo* v. *Municipal Court* (1978) 80 Cal.App.3d 522, 525-526 [145 Cal.Rptr. 636], and *Mitchell* v. *Orr* (1969) 268 Cal.App.2d 813, 817 [74 Cal.Rptr. 407].) We must follow *Cook* and *Thomas*.

■ We observe that factually the present case is distinguishable from *Axness* and not subject to the narrow holding it makes "only" with respect to cases in which the petitioner's "latest conviction occurred in another jurisdiction." (*Axness, supra,* 206 Cal.App.3d at p. 1496.) In Morris's case, the last two drunk driving convictions occurred in California in 1984 and 1988, and thus he had other opportunities to challenge the 1982 out-of-state drunk driving conviction. (See *Stenback* v. *Municipal Court* (1969) 272 Cal.App.2d 27, 30-32 [76 Cal.Rptr. 917]; *Williams* v. *Department of Motor Vehicles* (1969) 2 Cal.App.3d 949, 953-954 [83 Cal.Rptr. 76]; see also 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 800 et seq., but see *Axness, supra,* 206 Cal.App.3d 1489, 1496, fn. 6.)

In a very recent case that is not yet final, the Court of Appeal for the Sixth Appellate District considers a state of facts indistinguishable from those in the present case and concludes mandate against DMV based on claimed invalidity of an out-of-state prior drunk driving conviction is not available to the petitioner. In *Romo* v. *Department of Motor Vehicles* (1991) 229 Cal.App.3d 251 [280 Cal.Rptr. 33] mandate was denied a petitioner who had a 1982 out-of-state drunk driving conviction, a 1984 California drunk driving conviction and a 1989 California drunk driving conviction, as a result of

which DMV imposed a three-year revocation under section 13352, subdivision (a)(5). Petitioner sought to challenge the validity of the 1982 out-of-state conviction in the mandate proceeding against DMV. *Romo* followed *Thomas* and *Cook*, distinguishing *Axness*, and succinctly stated its holding and rationale as follows:

"The issue presented by this case in not whether a defendant may challenge the constitutional validity of a prior out of state drunk driving conviction; clearly he or she may. The issue is how, procedurally, such a challenge can be made. *Holding that mandamus against the DMV is not an appropriate way to proceed* does not preclude a challenge. It *simply reaffirms the basic principle that a writ will not issue against a respondent who does not have the legal authority to perform the requested act.*" (*Romo, supra,* 229 Cal.App.3d at p. 257, italics added.)

We agree with the holding and rationale expressed in *Romo* which is the most recent expression of what we think is the binding precedent in this state. The trial court properly denied Morris's petition for a writ of mandate seeking to challenge the constitutional validity of the out-of-state prior drunk driving conviction.

DISPOSITION

Judgment affirmed.

Kremer, P. J., concurred.

**WIENER, J.,** Concurring.—I agree the trial court properly denied Morris's petition for a writ of mandate seeking to challenge the constitutional validity of his 1982 out-of-state prior drunk driving conviction. As the majority notes, however, the case before us is not subject to *Axness*'s [*Axness* v. *Superior Court* (1988) 206 Cal.App.3d 1489 (225 Cal.Rptr. 896)] narrow holding (see maj. opn., *ante,* p. 160). Because I believe *Axness* was correctly decided I would have preferred the majority merely distinguish it on its facts thereby avoiding superfluous dictum which unnecessarily conflicts with established precedent.